UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN MARTINEZ, *et al.*,

                      Plaintiffs,

    -against-


FELIKS & SON STORAGE TANK CORP., *et al.*,

                    Defendants.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-03613 (GRB) (JMW)

**A P P E A R A N C E S:**

Steven John Moser, Esq.
**Moser Law Firm PC**
5 E. Main St
Huntington, NY 11743
*For Plaintiffs Juan Martinez, Jose Pimental,
Carlos Contreras, Efrain Reyes, and Jowany Castillo*

Robert Modica, Esq.
Sofya Uvaydov, Esq.
**Coffey Modica O'Meara Capowski, LLP**
200 East Post Road, Suite 210
White Plains, NY 10601
*For Defendants Feliks & Son Storage Tank Corp.,
and Feliks & Son Services, LLC*

**WICKS,** Magistrate Judge:

       Plaintiffs Juan Martinez, Jose Pimental, Carlos Contreras, Efrain Reyes and Jowany

Castillo ("Plaintiffs") commenced this action on June 28, 2021, against Defendants Feliks &

Son Storage Tank Corp., Feliks & Son Services LLC and Feliks Swierzewski[1] asserting violations

of federal and state labor laws.  (DE 1 at 1.)  After Defendants Feliks & Son Storage Tank Corp.

---

[1] Plaintiffs did not serve Swierzewski and had requested all claims against him be dismissed without
prejudice in their response to the Court's order to show cause.  (DE 10.)  On January 14, 2022, the Court
notified Plaintiffs that they must file a proposed order if they wish to dismiss claims against Swierzewski

and Feliks & Son Services, LLC ("Corporate Defendants") failed to appear or otherwise defend this action, at Plaintiffs' request, the Clerk of the Court entered a certificate of default against them on January 14, 2022.  (DE 9, 11.)  Before the Court, on referral from the Hon. Gary R. Brown, is the Corporate Defendants' motion to vacate the entry of default pursuant to Federal Rule of Civil Procedure 55(c).  (DE 26.)

For the reasons that follow, the undersigned respectfully recommends to Judge Brown that the Corporate Defendants' motion be granted, and the entry of default be set aside.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs were employed as laborers by the Corporate Defendants who are engaged in the business of installing gasoline storage tanks and systems.  (DE 1 at 2-3, 3-4.)  They allege violations of the Fair Labor Standards Act of 1938 ("FLSA") and various New York State laws. (DE 1 at 1.)  Under the FLSA, they contend that the Corporate Defendants failed to pay them overtime for hours worked in excess of forty hours per week as required under 29 U.S.C. § 207(a). (DE 1 at 11-13.)  Defendants Feliks & Son Storage Tank Corp. and Feliks & Son Services, LLC are a domestic corporation, and a domestic limited liability company, respectively.  (DE 1 at 3-4.) Both were formed under New York law, and both are owned by Defendant Feliks Swierzewski. (DE 1 at 3-4, 6.)

Plaintiffs served a Summons and Complaint on the Corporate Defendants on August 2, 2021, and September 10, 2021, respectively (DE 7-8) by delivering the papers to the New York

---

but none was filed.  (*See* Electronic Order dated Jan. 14, 2022).  At the October 21, 2022, hearing, Plaintiffs agreed to, and the undersigned respectfully recommends, dismissal of all claims against Swierzewski without prejudice.  (Tr. 3:9–4:11 (references to the transcript of the hearing held on October 21 are referred to as "Tr. ___").)

Secretary of State's office ("Secretary of State"), who then forwarded these documents to the address then on file for the Corporate Defendants, 191 Tulip Ave, Floral Park, New York 11001, which later turned out to be an old unused address ("Old Address").  (DE 26-1 at 2.)  As of 2018, according to the Corporate Defendants, their principal place of business was 142 Fairview Blvd, Hempstead, NY 1150 ("New Address").  (DE 26-1 at 4.)  Swierzewski alleges that he mistakenly thought that his accountant updated the Corporate Defendants' address with the Secretary of State when he updated them for tax and other purposes because he himself was unaware of the requirement.  (DE 26-1 at 2; Tr. 20:18-22.)  The Corporate Defendants further allege that since the address on file was outdated, they did not receive the Summons and Complaint until the end of November 2021 when someone from the Episcopal Church located at the Old Address informed them of lingering mail.  (DE 26-1 at 2; Tr. 21:6–18.)  However, Plaintiffs maintain that Swierzewski was in fact aware of the lawsuit as early as August 2021.  (Tr. 14:10–13.)

In the interim, there has been little activity on the docket of this case.  Accordingly, on January 11, 2022, shortly after the undersigned issued an order to show cause why a recommendation for dismissal should not be made to Judge Brown for failure to prosecute, Plaintiffs requested a certificate of default.  (*See* Electronic Order dated Dec. 29, 2021, DE 9.)  On January 14, 2022, the Clerk of the Court made an entry of default against the Corporate Defendants, pursuant to Rule 55(a), for failing to appear or otherwise defend this action.  (DE 11.)  On the same day, the Court granted Plaintiffs' request for leave to file a motion for default judgment against the Corporate Defendants.  (DE 11).  Four months later, on May 20, 2022, after requesting a series of extensions of time, Plaintiffs filed their motion for default judgment, but it was ultimately deemed withdrawn due to procedural defects.  (*See* DE 11-17.)

3

Two months after that, on July 8, 2022, the Corporate Defendants appeared in this action and filed the instant motion to vacate the entry of default entered by the Clerk.  (DE 17-20.)  On July 21, 2022, the Hon. Gary R. Brown then referred this motion to the undersigned for a Traverse Hearing and ultimately a Report and Recommendation.  (*See* Electronic Orders dated Jul. 21, 2022.)  On July 25, 2022, the undersigned directed the parties to appear for a hearing regarding the propriety of service and for argument as to Corporate Defendants' motion to vacate the entry of default (*see* Electronic Order dated Jul. 25, 2022), which was ultimately held on October 21, 2022.

The issues considered at the hearing included the following: (1) whether service upon the Secretary of State was proper, and (2) when and how the Corporate Defendants became aware of this action for purposes of considering willfulness.  Swierzewski, and Plaintiffs Juan Martinez and Jose Pimental, all testified at the hearing.

## II.    <u>LEGAL STANDARD UNDER RULE 55(c)</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Once a default is entered by the Clerk, "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  The court weights three factors in determining whether good cause exists to vacate an entry of default: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  The burden rests squarely with the defaulting to demonstrate that a vacatur is warranted and appropriate under the circumstances.  *See In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985).

4

The disposition of a motion for relief from an entry of default is "left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95; *Rolle v. Hardwick*, No. 14-CV-5247 (JS)(AYS), 2016 U.S. Dist. LEXIS 60112, at *6 (E.D.N.Y. May 4, 2016).  There is, of course, a strong preference "for resolving disputes on the merits," and refusal to set aside default is an "extreme measure [that] should be reserved by a trial court as a final, not a first, sanction imposed on a litigant." *Enron Oil Corp.*, 10 F.3d at 96.  Thus, any doubt "as to whether a default should be granted or vacated" must be "resolved in favor of the defaulting party." *Id.* at 96.

The Court is also mindful that when a certificate of default has been entered by the Clerk of the Court, but no default judgment has been entered, then Rule 55(c) applies, which is a more lenient standard than to set aside a default judgment under Rule 60(b).  *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).").  It is against this backdrop that the Court considers the present motion.

### III.   DISCUSSION

#### A.   Propriety of Service

As a threshold matter, the Corporate Defendants dispute the propriety of service.  (DE 25 at 11.)  Specifically, they claim that the service – here, made upon service on the Secretary of State – was constitutionally improper because Plaintiffs had actual notice that the Corporate Defendants' address had changed since Plaintiffs had visited their owner Feliks Swierzewski at the New Address.  (Feliks Aff. ¶ 14.)  That argument, however, misconstrues the law of New

York concerning service of process upon a corporation, and under the circumstances, its constitutional validity.  The Corporate Defendants have failed to provide any evidence sufficient to establish that Plaintiffs had actual knowledge that the address on file with the Secretary of State was incorrect.

A corporation may be served in accordance with the law of the state where the federal district court sits or where service is effectuated.  *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).  Under New York law, the Secretary of State is the designated agent for service for corporations.  N.Y. Bus. Corp. Law § 306(b)(1); *see also Baker v. Latham*, 72 F.3d 246, 255-56 (2d Cir. 1995).  Though the Secretary of State must send copies of papers served to the address on file, it is axiomatic that "[s]ervice of process [on a corporation] shall be complete when the secretary of state is . . . served."  *See Baker*, 72 F.3d at 255.  That is, from a plaintiff's perspective, once proper service is made upon the Secretary of State, service on the corporation has been effectuated.

The Corporate Defendants essentially argue that Plaintiffs had known the address on file with the Secretary of State was incorrect because "several of them" had visited Swierzewski's home on multiple occasions, and thus, service was not "reasonably calculated" to provide them with notice of this action.  (DE 25 at 11-12, DE 33 at 3-5.)  The Court rejects this argument.  Under New York law, a corporation is obligated to update and keep current its corporate records, particularly its place of business and agent for service of process.  *See Sheldon v. Plot Com.*, No. 15CV5885 (CBA) (CLP), 2016 WL 5107072, at *7-8 (E.D.N.Y. Aug. 26, 2016) ("[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process.").

The authorities relied upon by Corporate Defendants do not fully support their contention. For example, they cite to the district court's opinion in *Baker* for the proposition that service may

be constitutionally invalid where the serving party has actual knowledge that the address was improper. (DE 25 at 11). *See Baker v. Latham*, 808 F. Supp. 981, 984 (S.D.N.Y Mar. 23, 1992), *aff'd on other grounds*, 72 F.3d 246, 255-56 (2d Cir. 1995).[2]

On appeal, the Second Circuit did not credit the district court's assertion that actual knowledge of the corporation's improper address overcomes the well-established propriety of service on the Secretary of State. *See Baker*, 72 F.3d at 255. To the contrary, the court found that the corporation's untimely receipt of service due to its own failure to update its address with the Secretary of State as required did not offend due process. *See id.* ("In short, if as here a [plaintiff] employs a procedure reasonably calculated to achieve notice, successful achievement is not necessary to satisfy due process requirements."). More importantly, the court stated that, in "rejecting the dispositive effect" of that principle, the district court improperly relied on an unsupported allegation that the party effecting service had actual knowledge that the address on file with the Secretary of State was outdated. *Id.*

Similarly, the Corporate Defendants here, both through their briefs and at the hearing, proffered no evidence to support their conclusory allegation that Plaintiffs had *actual knowledge* that the Corporate Defendants' address for service of process had changed, nor do we find any in the record. (DE 25 at 12.) Swierziewski's primary argument is that Plaintiffs were aware of his new address because they had visited him there. (Feliks Aff. ¶ 2.) Even assuming Plaintiffs visited Swierziewski in Hempstead, which the Court finds happened, no evidence was proffered that

---

[2] The Court notes that Corporate Defendants cited *Baker v. Latham*, 808 F. Supp. 981, 984 (S.D.N.Y Mar. 23, 1992) without citation or reference to its subsequent history. (*See* DE 25.) That history, which undermines their position here, should have been cited. *See Village of Freeport v. Barrella*, 814 F.3d 594, 609 n. 60 (2d Cir. 2016) (reminding the bar of a lawyer's affirmative duty to advise court of adverse precedent); *Gesualdi v. Danielle Rigging, Inc.*, No. 09-CV-2124, 2011 WL 2516521, at *2, fn.5 (NGG) (ALC) (E.D.N.Y. June 23, 2011) ("New York Rules of Professional Conduct require lawyers to inform the court of adverse, controlling legal authority.").

Plaintiffs were ever made aware that the Corporate Defendants relinquished Floral Park as a corporate address.  In fact, the evidence adduced at the hearing raises a strong inference that the Corporate Defendants continued some presence in Floral Park even though Swierziewski moved his residence to Hempstead.

The Corporate Defendants' argument also presupposes that Plaintiffs were aware of what specific address was on file with the Secretary of State at the time they served the Summons and Complaint. Even if true, Plaintiffs were not tasked with making the mental leap that a change in Swierzewski's personal home address equated to a change in Corporate Defendants' address for service of process — particularly where public records clearly reflected the Old Address.  (DE 28-3.)  Swierziewski himself testified at the hearing that he maintained an active connection to the Old Address for a period of time following 2018 by collecting mail from the Church and also maintaining a Post Office box at the Floral Park Post Office.  (Tr. 27:15–29:4)

The authority relied upon by the Corporate Defendants is of no avail.

In *Robinson,* where the government mailed a notice of pending forfeiture proceedings to the home address on file with the Illinois Secretary of State pursuant to a vehicle forfeiture statute, the defendant there was known to be incarcerated by reason of his conviction.  *See Robinson v. Hanrahan*, 409 U.S. 38, 38-39 (1972).  The Court reasoned that service did not satisfy basic due process since "the State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined . . . ."  *Id.* at 40.  Thus, the Court found that "[u]nder these circumstances, it cannot be said that the State made any effort to provide notice which was 'reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings." *Id.*

8

The circumstances here bear no resemblance.  Here, the Corporate Defendants have not provided even a scintilla of evidence to charge Plaintiffs with actual knowledge that Corporate Defendants' address on file with the Secretary was incorrect.  The very fact that the Corporate Defendants continued to maintain a Floral Park PO box, collecting mail from the box and from the church for years, belies the argument that Plaintiffs somehow knew the Corporate Defendants' Old Address was no longer a valid address for the corporations.

The Corporate Defendants also cite generally to *Sheldon* to support the proposition that a plaintiff's actual knowledge that the defendant's address has changed is not "reasonably calculated service."  (*See* DE 25 at 11 (citing *Sheldon*, 2016 WL 5107072, at *7-8)).  In *Sheldon*, the court expressly stated that service upon the Secretary of State was complete upon receipt without regard to whether the defendant even received the papers.  *See Sheldon*, 2016 WL 5107072, at *7-8.  There like here, the plaintiff served the defendant through the Secretary of State.  *Id.*  The defendant, a corporation registered to do business in New York, had the wrong address on file with the Secretary of State.  *Id.*  The address on file was a vacant building under construction and the defendant had not left any forwarding address.  *Id.* at *3.  The plaintiff made other attempts to serve the defendant such as through the attorney the defendant had retained for pre-suit settlement discussions, but that attorney said she did not represent the defendant in the suit.  *Id.* at *2-3.  After discussing the propriety of service through the Secretary of State under federal law, the court concluded that service was properly effectuated under New York Business Corporation Law Section 306.  *Id.* at *8.

*Sheldon* is no lifeboat for the Corporate Defendants.  They were registered to do business in New York, served through the Secretary of State, and did not have their correct address on file

as they should have.  And again, they have not demonstrated that Plaintiffs had actual knowledge that their address on file with the Secretary of State was incorrect.

The Corporate Defendants' reliance on the remaining authority they cite is also misplaced. Specifically, they rely on cases that did not address service through the Secretary of State.  *See, e.g.*, *Adeyi v. U.S.,* No. 06CV3842(ARR)(LB), 2008 WL 793595, at *4-5 (E.D.N.Y. Mar. 25, 2008) (concerning a "Final Administrative Action" letter sent to the defendant's home address when the government knew the defendant was incarcerated and the address was not his current address); *Acosta v. U.S.*, No. 12-MC-793 (ARR), 2013 WL 2444172, at *2 (E.D.N.Y. Jun. 5, 2013) (concerning a forfeiture notice mailed to the defendant's home address when the government knew the defendant was incarcerated).  These cases, however, are factually dissimilar and shed no light on the issue of whether service on the New York Secretary of State is valid under the present circumstances.

The record is clear here that Plaintiffs served the Summons and Complaint upon the Secretary of State.  (DE 7-8.)  That method completed service.   The Corporate Defendants' conclusory assertions do not support an inference that Plaintiffs had actual knowledge that their business address on file with the Secretary of State was incorrect.  Thus, due process was not offended.   Therefore, the Court finds that service upon Corporate Defendants was both procedurally and constitutionally proper.  Now the Court turns to whether good cause exists for vacating the entry of default.

### B.  Do Grounds Exist to Vacate the Default?

The three grounds – willfulness, meritorious defense, and prejudice – are considered below.

### i.  Willfulness:

"[W]illfulness requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 346 (S.D.N.Y. 2011).  In making this determination, the Court may consider whether a defendant's failure to timely answer "was the result of a good faith mistake."  *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986).  Additionally, the Court can consider whether a defendant promptly moved to correct the default and whether it purposefully hid its address to avoid service of process.  *See Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (affirming the trial court's finding that defendant did not move within a reasonable time where his motion for vacatur was filed seven months after learning of the default); *Llolla v. Karen Gardens Apt. Corp.*, No. 12-CV-1356 (MKB) (JO), 2016 WL 233665, at *3 (E.D.N.Y. Jan. 20, 2016).  The Court will resolve doubts against default and in favor of a trial on the merits.  *See Meehan*, 652 F.2d at 277 ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits.")

The Corporate Defendants represent that their failure to update their address for purposes of service with the Secretary of State was due to Swierzewski's mistaken belief that his outside accountant had done so when updating their address for tax records.  (Feliks Aff. ¶ 12.)  They contend that this failure does not support a finding of willfulness sufficient to deny their motion to vacate the default.  (DE 25 at 9-10.)  Plaintiffs in turn assert that the Corporate Defendants have disregarded their obligations under New York Law by failing to update their address with the

11

Secretary of State.  (DE 27 at 7.)  Plaintiffs also note that online public records allegedly reflect

that the Corporate Defendants have yet to update their address with the Secretary of State.  (DE

27-8.)

The Second Circuit has found that "failure either to collect corporate mail sent to the [prior]

address or to change the address for service of process with the Secretary of State constitutes a

willful disregard of legal process and a willful default."  *See In re Martin-Trigona*, 763 F.2d at

505-06.  But here, Swierzewski was purportedly unaware that the address had not been updated or

that business mail was still going to the Old Address at the time of service.  (Feliks Aff. ¶ 12-13.)

He states that he mistakenly thought the Corporate Defendants' "outside accountant changed the

address with the New York Secretary of State at the same time it changed the address for all tax

filings."  (Feliks Aff. ¶ 12.)  And since the address had changed three years prior to service, he no

longer automatically received mail forwarding from that address.  (Feliks Aff. ¶ 13.)  The Court

finds Swierzewski's testimony that he was unaware that his business address with the Secretary of

State was incorrect to be credible.[3]

---

[3] Plaintiffs argue that Swierzewski "knew or should have known" that the address on file with the
Secretary of State was outdated since in early 2021 the Corporate Defendants filed an answer in an
unrelated state court case after service was effectuated through the Secretary of State at the Old Address,
*see Gibson v. 2947 Jerome Ave. Service Station, Inc.*, No. 22241/2019E (N.Y. Sup. Ct., Bronx Cnty. filed
Feb. 22, 2019).  (DE 32 at 2-3.)  This argument is deficient for numerous reasons.  But chief among them
is that though some documents filed by the plaintiffs in that case note the Old Address, none of those
documents clearly indicate what address the Secretary of State had on file for Corporate Defendants.  The
documents only indicate that the Secretary of State had been served.  This does not sufficiently rebut the
evidence supporting Swierzewski's mistaken belief regarding the need to update the address.
More importantly, the Court provided the parties with an opportunity to submit supplemental letters
marshalling the facts from the evidentiary hearing.  (Tr. 51:6-11.)  This was not an invitation to submit
new evidence as Plaintiffs attempted to do in their letter.  (*See* DE 32.)  Plaintiffs had the opportunity to
present this evidence through their briefing or at the hearing where they could have questioned
Swierzewski and given him an opportunity to explain it.  Thus, the Court need not consider it.  *See, e.g.*,
*Khaldei v. Kaspiev*, No. 10 CIV. 8328 JFK, 2014 WL 2575774, at *4 (S.D.N.Y. Jun. 9, 2014) (refusing to
consider exhibits offered after evidentiary hearing).

Additionally, the Corporate Defendants' allegation that Plaintiffs knew of the New Address because they visited Swierzewski there does not cure their failure to update their address with the Secretary of State for purposes of proper process.  However, it does support an inference that the Corporate Defendants did not purposefully make their address unavailable, which in this Court's view mitigates against a finding of willfulness.  *See e.g.*, *Llolla*, 2016 WL 233665, at *3 (noting that defendant did not hide their address from plaintiff).

Under the circumstances, the Court finds that Swierzewski's mistaken belief that the accountant updated the address for service of process with the Secretary of State was not tantamount to a willful disregard of legal process, but instead "was the result of a good faith mistake."  *See Sony Corp.*, 800 F.2d at 320; *see also Llolla*, 2016 WL 233665, at *3 (noting that a defendant's failure to update their address with the Secretary of State is insufficient evidence standing alone to establish willfulness and the court should look at "the broader context of the dispute").

Second, Plaintiffs argue that the Corporate Defendants did not satisfactorily explain their default because they have failed to allege sufficiently specific facts to show they moved promptly to vacate the default.  (DE 26 at 1.)  Specifically, Plaintiffs ask the Court to infer willfulness from the Corporate Defendants' failure to provide a satisfactory explanation of when they become aware of the lawsuit, steps they took thereafter to defend this suit, and the relevant dates.  (DE 26 at 7.)  However, considering the hearing testimony, the Corporate Defendants have sufficiently explained and justified their default.

Third, the parties dispute when the Corporate Defendants (*i.e.*, Swierzewski) became aware of the lawsuit, and whether they acted promptly to vacate the default.  Swierzewski admits being aware of the lawsuit as early as November 2021.  (Tr. 21:6–18.)  Indeed, he maintains that he

become aware of the Summons and Complaint after someone from the Church located at the Old Address informed him of lingering mail toward the end of November 2021.  (Feliks Aff. ¶ 13; Tr. 21:6–14.)  Plaintiffs Juan Martinez and Jose Pimental, who both primarily speak Spanish and testified through an interpreter,[4] alleged that they received calls from Swierzewski,[5] who primarily speaks polish, as early as August 2021, related to the lawsuit.  (Tr. 56:19–21, 59:2–7, 64:14–66:5.) After hearing the testimony of the parties and considering all of the evidence, the Court finds that the evidence suggests that Swierzewski may have been aware of the lawsuit as early as August of 2021, but the Court does not fully credit either party's alleged timeline.  (Tr. 66:13–18.)  At the very least, the evidence is clear Swierzewski learned of the lawsuit and received the Summons and Complaint in November 2021.

Regardless, the Court credits Swierzewski's testimony that he made reasonable efforts to engage counsel in order to appear and vacate the entry of default such that he did not willfully default.  The Clerk of the Court entered default against on January 14, 2022, and Corporate Defendants appeared and moved to vacate default less than six months later on July 8, 2022.  (DE 11, 17-20).  Swierzewski credibly testified that he made a genuine effort to contact his current counsel, Robert Modica but did not hear from him until around May of 2022 after the time to answer had elapsed.  (Tr. 21:19–22:9.)[6]  And in the interim, he made diligent efforts to reach out

---

[4] The Court swore in and deemed qualified an interpreter offered by Plaintiff over Defendants objections that she was uncertified.  (Tr. 52:18–54:25.)  The district court has the discretion to qualify an interpreter. *See Act II Jewelry, LLC v. Zhu*, No. 2:09CV407, 2010 WL 11450509, at *3 (E.D. Va. Feb. 19, 2010) (finding an interpreter with fourteen years of experience translating to be qualified); *see also U.S. v. Ball*, 988 F.2d 7, 9 (5th Cir. 1993) ("A trial court's decision to appoint an interpreter is reviewed under an abuse of discretion standard.").

[5] The Court sustained Corporate Defendants' objections to introduction of unauthenticated screenshots of calls that Plaintiffs attempted to introduce into evidence.  (Tr. 57:1–58:3, 59:11–60:19.)

[6] Mr. Modica, although present in the courtroom for the hearing, was not called to testify as to when he was contacted by Swierzewski.

to various attorneys to engage them, even enlisting his accountant in the search, but none agreed to take the case. (Tr. 22:2–5, 42:14.) When Swierzewski, who did not have access to the Court's online system, successfully secured counsel in May of 2022, and learned of the entry of default, he promptly moved to vacate two months later. *See Llolla*, 2016 WL 233665, at *3 (finding that defendants' promptly response to the default judgments counseled against willfulness); *see also Dow Chem. Pacific Ltd.*, 782 F.2d at 336 (finding motion to vacate made seven months after learning of the entry of default as unreasonable).[7]

Perhaps Swierzewski could have pursued other alternatives if he was having trouble securing counsel. But after considering the evidence presented, and resolving doubts in Corporate Defendants' favor, the Court finds that Swierzewski's foot-dragging actions amount to nothing more than negligence, rather than willfulness. Therefore, the Court finds that the default was not willful under the circumstances. *Cf. Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (noting in the less forgiving Rule 60(b) context that the Court looks for bad faith or "something more than mere negligence").

### ii. Meritorious Defense

The Corporate Defendants have presented evidence "beyond conclusory denials" to show they have a potentially meritorious defense to this action. *Enron Oil Corp.*, 10 F.3d at 98. The key inquiry under this prong is not "whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* Plaintiffs allege that Corporate Defendants violated the FLSA by failing to pay overtime wages at the rate of one and a half times their hourly rate above forty hours worked per week. *See* 29 U.S.C.

---

[7] The Corporate Defendants maintain that unlike a Rule 60(b) motion for vacatur, a motion under Rule 55(c) does not require them to move within a "reasonable time." (DE 25 at 16). Since promptly moving for vacatur is considered under whether a party willfully defaulted, this argument is immaterial.

§ 207(a); *see also Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002). The Corporate Defendants argue three defenses. In support of these defenses, they submitted an affidavit by Swierzewski and sample pay roll records.

First, the Corporate Defendants state that Defendant Feliks & Son Services, LLC (owned by Swierzewski) has no employees and generates less than $500,000 in revenue annually. (Feliks Aff. ¶ 8, 9.) If proven at trial, this would constitute a complete defense for Defendant Feliks & Son Services, LLC against any alleged overtime violations of the FLSA.

Second, they allege that Swierzewski is in possession of payroll records that contradict the hours worked by Plaintiffs and refute their FLSA claims. (Feliks Aff. ¶ 17-21.) As a sample, they provided the 2016 payroll records of Plaintiff Efrain Reyes. (*See* DE 26-2.) These records indicate that the Corporate Defendants have kept payroll records. If they indeed possess payroll records disputing Plaintiffs' FLSA allegations, which would likely be produced through the course of discovery, it would raise a triable issue of fact for the jury to consider. If Swierzewski's statements are credited and proven to be true at trial, the Corporate Defendants would have a complete defense against Plaintiffs' FLSA claims. Thus, the Corporate Defendants have presented a potentially meritorious defense. *See, e.g.*, *Angel v. Queens Blvd. Car Wash*, No. 06-CV-6667 (CBA), 2008 WL 111159, at *7 (E.D.N.Y. Jan. 8, 2008), *report and recommendation adopted*, Order (Jan. 8, 2008), Dkt. No. 41.

Third, the Corporate Defendants assert that a showing that the FLSA violation was "made in good faith and that there were reasonable grounds for believing it was not a violation" is a defense to such alleged violations. (DE 26 at 5.) Although a successful good faith defense can avoid liability for an FLSA overtime wage violation, "the statute itself requires that the defendant 'pleads and proves that the act or omission complained of was in good faith in conformity with

16

and in reliance on' at least one of a variety of sources." *Scott v. Chipotle Mexican Grill, Inc.*, 67 F.Supp 3d 607, 612 (S.D.N.Y. 2014). The Corporate Defendants have not provided evidence that if proved at trial would show that they, in good faith, conformed with or relied on any, for example, "written administrative regulation, order, ruling, approval, or interpretation' of the Administrator of the Wage and Hour Division of the Department of Labor" with respect to any "act[s] or omission[s] complained of." *See id.* Thus, they have not provided evidence to show that this a potentially meritorious defense.

Finally, the Corporate Defendants argue that they have a valid statute of limitations defense because Plaintiffs seek to apply a toll to their claims. (DE 26 at 6.) The nature of their argument in unclear. However, even assuming the toll does not apply to Plaintiffs' claims, the statute of limitations is still at least two years. *See id.* ("A lack of willfulness also affects the Act's statute of limitations, which is generally two years but extended to three years for willful violations."). Plaintiffs commenced this action on June 28, 2021, and so a portion of their claims would still be within the two-year period. (DE 1 at 1.) For example, four Plaintiffs alleged that in the week ending "November 30, 2019" they worked over 40 hours but were not paid overtime. (DE 1 at 8-10). Thus, this also would not be a complete defense in this action even if proven at trial.

Nonetheless, the Corporate Defendants have carried their burden of showing the existence of at least one potentially meritorious defense. *See Enron Oil Corp.*, 10 F.3d at 98. Notably, Plaintiffs have not rebutted this evidence nor responded to the Corporate Defendants arguments, instead their briefs are virtually silent on this issue.[8] Overall, this factor weighs in favor of vacatur.

---

[8] Plaintiffs did not address or rebut arguments concerning the "prejudice" or "meritorious defense" factors. Rather, they simply note that the Court possesses the discretion to turn a blind-eye to these factors if it finds willful default. (*See* DE 27.) The chickens of course, should never be counted before they are hatched. Claiming willful default ends the inquiry, Plaintiffs cite cases using the more rigorous standard for vacatur of a default judgment, but even then, no single factor is dispositive. *See I.L. G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 823 (S.D.N.Y. 1997). Regardless, the Court in

### iii. Prejudice

The final factor the Court must consider is whether Plaintiff would be prejudiced if Corporate Defendants' motion to vacate were granted. Plaintiffs were silent on the issue of prejudice in their opposition brief. (*See* DE 27.) In any event, prejudice toward Plaintiff would be minimal. This case has gone no further than filing of the complaint. There is also no indication records or witnesses are no longer available. And as noted above, Plaintiffs too have delayed in the prosecution of this suit.

Plaintiffs requested a certificate of default three months after executing the summonses against Corporate Defendants and only after the undersigned ordered Plaintiffs to show cause as to why he should not recommend this case for dismissal to the Hon. Gary R. Brown for failure to prosecute. (*See* Electronic Order dated Dec. 29, 2021.) There was then a six-month delay between the entry of default to when Corporate Defendants moved to vacate. (DE 11, 18.) But Plaintiffs filed their motion for default judgment four months after the entry of default, and only two months before Corporate Defendants moved to vacate, because of numerous extensions requested by Plaintiffs. And the motion for default judgment was ultimately withdrawn with leave to renew in compliance with the Hon. Gary R. Brown's individual rules. (*See* Electronic Order dated May 24, 2022). The delay attributable solely to the Corporate Defendants' tardy appearance is minimal. And Plaintiffs have failed to articulate any species of prejudice. Thus, this factor weighs in favor of vacating the entry of default. *See Enron Oil Corp.*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice.").

---

the exercise of its discretion, would consider whether *if* it found willful default that would be enough. Moreover, as the Corporate Defendants note, Plaintiffs' silence on the prejudice prong does not favor them. *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 216 n.2 (S.D.N.Y. 2021) (collecting cases that note the failure to address arguments raised in an opponent's brief can be treated as an abandonment or concession of those arguments).

Given courts' preferences for resolving disputes on the merits, and considering the triable issues of fact presented by the record, the Court resolves any doubts in favor of the Corporate Defendants.  *See Meehan*, 652 F.2d at 277 ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits."); *Enron Oil Corp.*, 10 F.3d at 96 (any doubt "as to whether a default should be granted or vacated" must be "resolved in favor of the defaulting party.").

On balance, the factors weigh in favor of finding good cause for vacating the entry of default.

## CONCLUSION

In sum, the Court finds that the relevant factors weigh in favor of vacatur.  Accordingly, the undersigned respectfully recommends that the Corporate Defendants' motion to vacate the entry of default be granted with leave to file an answer within a defined period of time set by Judge Brown.

## IV.    OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008)

("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
            November 1, 2022

SO ORDERED

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge